IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LESTER WEATHERSPOON, ) | CASE NO. 1:07CV2078 |
| ) | |
| Petitioner, ) | |
| ) | JUDGE OLIVER |
| v. ) | |
| ) | MAGISTRATE JUDGE HEMANN |
| CLIFFORD SMITH, Warden, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Lester Weatherspoon ("Weatherspoon") petitions this court for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on July 12, 2007. Weatherspoon is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Weatherspoon*, Case No. 05 CR 122H (Richland County 2005). For the reasons given below the magistrate judge recommends that the petition be denied.

I

The January term of the Richland County grand jury indicted Weatherspoon on two counts of burglary in violation of Ohio Rev. Code § 2911.12(A)(3). The state appellate court reviewing Weatherspoon's conviction described the following facts as relevant to the case:

{¶ 3} Appellant Lester Weatherspoon, was charged with two counts of burglary arising out of the break-ins at two separate homes in Mansfield, Ohio in December of 2004.

{¶ 4} The first burglary took place sometime between December 23, 2004 and December 24, 2004 at 302 West Third Street. (T. at 215, 219). It was discovered by a friend of the homeowner, who went to the home to pick up a kerosene heater. (T. at 221, 222). The rear window of the home had been smashed out, and there were footprints in the snow. (T. at 216). Upon discovering the burglary, the friend called the homeowner, Jerry Cole, at work, and called the police. (T. at 224). When Mr. Cole arrived at his home, he found the inside of the home ransacked. (T. at 216-217). He also discovered numerous items missing, including a television, DVD player, stereo equipment, approximately 200 CDs, and approximately $500.00 worth of Christmas gifts. (T. at 216-218, 231-232).

{¶ 5} The second burglary occurred on December 27, 2004 at 240 Clairmont Avenue. (T. at 238). On that date, the homeowner, Edward Dawson, arrived home from work at approximately 3:00 a.m. to discover the glass in the back door of his home broken out. (T. at 239). When he entered the home after calling police, Mr. Dawson discovered various items missing. Among the property which was stolen was a television, DVD player, two VCRs, approximately seventy DVDs, and some CDs. (T. at 244-245). When he attempted to shovel away the broken glass outside the door, he discovered glass imbedded in the handle of a snow shovel, which had apparently been used to break out the glass. (T. at 242). On the inside of the door, he also discovered blood on the broken glass. (T. at 259, 268).

{¶ 6} Appellant was linked to the second burglary through D.N.A. evidence obtained from the blood found on broken glass inside the door. (T. at 293-294). When the Appellant was questioned by police on February 9, 2005, he admitted to burglarizing the home at 240 Clairmont Avenue. (T. at 305-306). He indicated that he and the upstairs neighbor, Rodney Allen, had stolen numerous items from the home, and sold them for crack cocaine. (T. at 306). During the interview, Appellant also admitted to burglarizing the home at 302 West Third Street with an individual named Ronald Taylor. (T. at 306, 307). When he was driven to the location, he was able to identify the window through which he gained entry into that residence. (T. at 308).

{¶ 7} At some point after the Appellant was questioned by police on February 9, 2005, he was returned to prison on a parole violation. His case was originally set for trial on July 11, 2005, within the statutory speedy trial time. However, it was continued five times sue sponte by the trial court. Four of those continuances were due to conflicts with other trials, and the other was due to the unavailability of the trial judge.

2

*2 {¶ 8} On January 5, 2006, the Appellant, through his counsel, filed a motion to dismiss alleging that his right to a speedy trial had been violated because he was not brought to trial within 270 days.

{¶ 9} On January 6, 2006, a hearing was held on said motion to dismiss. At the conclusion of the hearing, the trial court overruled same, finding that Appellant's speedy trial time had been tolled by necessary and reasonable continuances.

{¶ 10} The Appellant's jury trial ultimately commenced on January 10, 2006 after he refused to enter a guilty plea at the change of plea hearing scheduled on January 9, 2004.

{¶ 11} During the voir dire phase of his trial, several observers entered the courtroom and sat in the back of the gallery near some of the potential jurors. One of these observers made a comment that the Appellant was a "career criminal." When the matter was brought to the attention of the trial court, it questioned potential jurors seated in that area as to whether they had heard the comment. Several jurors who had overheard the comment were dismissed.

{¶ 12} During the bench conference with one of the jurors who overheard the comment, several other members of the jury panel heard that juror mention the words "career criminal."

{¶ 13} After questioning by the trial court as to what they heard, one of the jurors was dismissed upon a challenge for cause. The court determined that the other juror, who had overheard only the word "criminal" without knowing the context, was not prejudiced and could still be fair and impartial. She remained on the jury.

{¶ 14} The trial court overruled the Appellant's motion for a mistrial relating to this issue.

{¶ 15} Once a jury was seated, the Appellant's trial lasted two days. At the conclusion of the trial, the jury reached a hung verdict on count one of the indictment, the count relating to the burglary of 302 West Third Street. The jury found the Appellant guilty of count two of the indictment, the count relating to the burglary of 240 Clairmont Avenue.

{¶ 16} By Sentencing Entry dated January 12, 2006 and filed January 13, 2006, the trial court sentenced Appellant Weatherspoon to a term of incarceration of three (3) years, to be served "consecutive to present term."

*State v. Weatherspoon*, 2006 WL 2640235, at *1-*2 (Ohio App. Sept. 5, 2006).

Weatherspoon timely appealed his conviction to the state appellate court. In his appeal Weatherspoon raised two assignments of error:

> **ASSIGNMENT OF ERROR NO. I:** THE STATE VIOLATED DEFENDANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO SPEEDY TRIAL BY COMMENCING TRIAL HEREIN MORE THAN TWO HUNDRED SEVENTY DAYS AFTER THE INITIATION OF PROSECUTION.
>
> **ASSIGNMENT OF ERROR NO. II:** THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT WHEN IT DENIED DEFENSE MOTIONS FOR MISTRIAL BASED ON COMMENTS BY OBSERVERS AND THE COURT THAT DEFENDANT WAS A "CAREER CRIMINAL."

On September 5, 2006 the state appellate court overruled Weatherspoon's assignments of error and affirmed the judgment of the trial court.

Weatherspoon timely filed a notice of appeal in the Ohio Supreme Court. In his memorandum in support of jurisdiction Weatherspoon raised two propositions of law:

> Proposition of Law I: A defendant's right to a speedy trial is violated when the trial court grants unreasonable sua sponte continuances that push the trial date past the 270-day limit of R.C. 2945.71(C)(2).
>
> Proposition of Law II: A defendant is denied a fair and impartial jury when juror's [sic] might be influenced by the trial court's characterization of the defendant as a "career criminal." Fifth, Sixth, and Fourteenth Amendment's violated. Thus, the trial court's failure to grant a mistrial after members of the jury heard those comments made by observers and the trial court constituted an abuse of discretion.

On January 24, 2007 the Ohio Supreme Court declined jurisdiction and dismissed Weatherspoon's appeal as not involving a substantial constitutional question.

Weatherspoon filed a petition for a federal writ of habeas corpus on July 12, 2007. Weatherspoon's petition asserts two grounds for relief:

> Ground one: Violation of Speedy Trial Right R.C. 2945.71(C)(2).
>
> Supporting FACTS (state *briefly* without citing cases or law) THE STATE VIOLATED DEFENDANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL BY COMMENCING TRIAL THEREIN MORE THAN TWO

4

HUNDRED SEVENTY (270) DAYS AFTER THE INITIATION OF PROSECUTION. A DEFENDANT'S RIGHT TO A SPEEDY TRIAL IS VIOLATED WHEN THE TRIAL COURT GRANTS UNREASONABLE <u>SUA SPONTE</u> CONTINUANCES THAT PUSH THE TRIAL DATE PAST THE 270-DAY LIMIT OF R.C. 2945.71(C)(2).

Ground two: DENIAL OF MOTION FOR MISTRIAL_FAIR AND IMPARTIAL JURY.

Supporting FACTS (state *briefly* without citing cases or law) DEFENDANT WAS DENIED A FAIR AND IMPARTIAL TRIAL AND JURY WHEN MOTION FOR MISTRIAL WAS DENIED BASED ON PREJUDICIAL AND INFLAMMATORY STATEMENTS MADE BY OBSERVERS IN THE PRESENCE OF THE JURY. AN OBSERVER MADE THE STATEMENT THAT THE DEFENDANT WAS A "CAREER CRIMINAL" DIRECTLY IN THE PRESENCE AND HEARING OF THE MEMBERS OF THE JURY, AND A MOTION FOR MISTRIAL WAS SUBMITTED IN LIGHT OF IT, BUT DENIED BY THE TRIAL COURT.

(Punctuation and capitalization in the original.) Respondent filed an Answer on October 25, 2007 (Docket #7). Thus, the petition is ready for decision.

## II

### A. *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d). Weatherspoon was convicted in the court of common pleas in Richland County, and Weatherspoon filed his writ of habeas corpus in the Northern District of Ohio. This court has jurisdiction over Weatherspoon's petition.

### B. *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

5

circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. Weatherspoon's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.   *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Weatherspoon has no remaining state remedies for his claims. Because Weatherspoon has no remaining state remedies, his claims have been exhausted.

6

D.   *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his or her constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent does not contend that Weatherspoon has procedurally defaulted either of his claims.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application

8

of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Weatherspoon's two grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A. *Ground one: Whether the trial court violated Weatherspoon's right to a speedy trial*

Weatherspoon argues that he was denied his right to a speedy trial because the court did not bring him to trial within the 270-day period required by Ohio Rev. Code § 2945.71(C)(2). He also asserts that the delay in bringing him to trial violated his constitutional right to a speedy trial. Respondent denies that the delay in bringing Weatherspoon to trial deprived Weatherspoon of a speedy trial.

Weatherspoon's contention that he is entitled to habeas relief because he was not brought to trial within the 270-day period required by Ohio Rev. Code § 2945.71(C)(2) is not cognizable as a ground for federal habeas relief. Federal courts generally do not grant habeas relief for alleged errors arising under state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764 (1990); see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). An error of state law may serve as a basis for habeas relief only when the petitioner was denied fundamental fairness in the trial process. *Id.*; see also *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1354 (6th Cir.

9

1993). An error of state law so severe as to deny fundamental fairness offends the due process clauses of the Fifth and Fourteenth Amendments. See *United States v. Agurs*, 427 U.S. 97, 107 (1976); see also *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). Weatherspoon has not alleged that the delay in bringing him to trial violated fundamental fairness.

Nor did the delay in bringing Weatherspoon to trial violate his federal constitutional right to a speedy trial. The Sixth Amendment's guarantee of "the right to a speedy and public trial" cannot be reduced to a guarantee of a trial within a particular number of days after arrest. The Supreme Court has found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker v. Wingo*, 407 U.S. 514, 523 (1972). Rather, caselaw recognizes a four-part "*Barker*" analysis for determining whether a delay before trial violated a defendant's right to a speedy trial: "[W]hether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result. *Doggett v. United States*, 505 U.S. 647, 651 (1992).

The inquiry into whether the delay before trial was uncommonly long is a double inquiry. First, "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay . . . ." *Id.* at 651-52. Courts have generally found postaccusation delays sufficiently "presumptively prejudicial" to trigger a Barker analysis as they have approached one year. *Id.* at 652 n.1. Second, if the defendant has shown

that the delay is sufficiently long to be "presumptively prejudicial," "the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652.

The second prong of the analysis looks at the cause of the delay. If the government is found more to blame for the delay than the defendant, then a distinction is made regarding the government's motive for the delay. An intentional attempt to gain advantage at trial is weighed heavily against the government. *Barker*, 407 U.S. at 531. On the other hand,

> [b]etween diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Doggett*, 505 U.S. at 656-67. However, where official negligence has caused the delay, "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows." *Id.* at 657. "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531.

Relatively long delays due to negligence will not be found to violate the right to a speedy trial absent a showing of some particular prejudice resulting from the delay. The Supreme Court has found that negligent delay without a particular showing of prejudice was sufficiently long to constitute a violation of the right to a speedy trial only in *Doggett*. In that case the delay was eight and a half years. Delays attributable to government negligence of over four years have been found not to violate the right to a speedy trial absent a particularized showing of prejudice. *Barker*, 407 U.S. at 534. Where the state

11

has not acted in bad faith and the petitioner has not shown actual prejudice, the Sixth Circuit has held that delays of up to 20 months are insufficient to establish a violation of the right to a speedy trial. *United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007).

In the instant case the state appellate court found the following relevant facts in examining the delay in bringing Weatherspoon to trial:

> {¶ 41} This court finds that each of the sua sponte continuances in the case sub judice were for good cause and were necessary and reasonable, given that the trial court entered upon the record that it was engaged in other trials and the number of days for which the trial was continued was not unreasonable.
>
> {¶ 42} Thus, we find that 182 days were the result of reasonable and necessary continuances wherein the time was tolled. When this number of days is subtracted from the 334 elapsed days, the total number of days attributable to the State is only 152.

*Weatherspoon*, 2006 WL 2640235 at *4-*5.

Even assuming that the 334 day period that elapsed before Weatherspoon was brought to trial crosses the threshold from ordinary delay to presumptively prejudicial delay, there is no indication that bad faith or negligence was a cause of the delay. Indeed, the state appellate court found that the delay was necessary and reasonable. Moreover, Weatherspoon does not allege he was prejudiced by the delay. Absent bad faith on the part of the government or a showing of actual prejudice, the facts of this case do not remotely justify a finding that the delay in bringing Weatherspoon to trial violated his federal constitutional right to a speedy trial.

For the above reasons the magistrate judge recommends that the court overrule Weatherspoon's first ground for relief.

B.  *Ground two: Whether Weatherspoon was denied his right to a fair trial and an impartial jury*

Weatherspoon argues in his second ground for habeas relief that he was denied his right to a fair trial and an impartial jury when the court denied his motion for a mistrial after an observer at the trial referred to Weatherspoon as a "career criminal" within the hearing of the jury. Respondent denies that the comments or the denial of Weatherspoon's motion for a mistrial violated his rights to a fair trial and an impartial jury.

The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). The analysis of alleged violations of the right is identical under either amendment. *Id.* "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Not all violations of the right to a fair trial, however, entitle a petitioner to habeas relief. In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Supreme Court held that a court considering a collateral review of a conviction should weigh constitutional "trial error"[1] by

---

[1] According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is

13

(1) evaluating the error in the context of the entire record; (2) asking whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there is grave doubt about whether the error was harmless. *Id.* at 638. A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

The Sixth Amendment guarantees persons charged with a crime "the right to a speedy and public trial, by an impartial jury . . . ." In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court held that a trial court confronted with an allegation of external contact with a juror during trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *United States v. Rigsby*, 45 F.3d 120, 123 (6th Cir. 1995) (quoting *Remmer*, 347 U.S. at 230).

Nevertheless, there must be some basis for believing that there has been "an external contact or communication regarding matters pending before the jury. . . . The need for a Remmer hearing necessarily does not arise absent the existence of an outside influence on a juror." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997). The Sixth

---

amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." *Id.* at 307-308. At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.* at 309. The existence of such defects-- deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process. See *id.*, at 309-310. Since our landmark decision in *Chapman v. California*, 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

Circuit generally requires trial courts to conduct *Remmer* hearings only when there are allegations of "intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *Frost*, 125 F.3d at 377 (quoting *Rigsby*, 45 F.3d. at 124). Once a defendant shows the need for a *Remmer* hearing, the defendant must show that an unauthorized contact created actual juror bias; courts should not presume that a contact was prejudicial. *Frost*, 125 F.3d at 377; *see also United States v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993).

The state appellate court reviewing the related assignment of error on direct review made the following relevant findings of fact:

> {¶ 10} The Appellant's jury trial ultimately commenced on January 10, 2006 after he refused to enter a guilty plea at the change of plea hearing scheduled on January 9, 2004.
>
> {¶ 11} During the voir dire phase of his trial, several observers entered the courtroom and sat in the back of the gallery near some of the potential jurors. One of these observers made a comment that the Appellant was a "career criminal." When the matter was brought to the attention of the trial court, it questioned potential jurors seated in that area as to whether they had heard the comment. Several jurors who had overheard the comment were dismissed.
>
> {¶ 12} During the bench conference with one of the jurors who overheard the comment, several other members of the jury panel heard that juror mention the words "career criminal."
>
> {¶ 13} After questioning by the trial court as to what they heard, one of the jurors was dismissed upon a challenge for cause. The court determined that the other juror, who had overheard only the word "criminal" without knowing the context, was not prejudiced and could still be fair and impartial. She remained on the jury.
>
> {¶ 14} The trial court overruled the Appellant's motion for a mistrial relating to this issue.
>
> \* \* \* \* \*
>
> {¶ 50} Upon a thorough review of the record, we find that each of the other jurors who were ultimately seated on the panel was questioned in voir dire, out of the

> presence of the other jurors, and each stated they had not heard the "career criminal" comment. The trial court excused each of the prospective jurors who heard such comment.
>
> {¶ 51} The record does not support appellant's contention that the jury was prejudiced by the "career criminal" comment as there is no evidence that the jurors were aware that such comment had been made. The jurors who were interviewed with regard to such comment denied any knowledge as to same.
>
> {¶ 52} Based on the foregoing, we find that the trial court did not abuse its discretion in refusing appellant's Motion for Mistrial.

*Weatherspoon*, 2006 WL 2640235 at *2, *5-*6.

The state appellate court found that the trial court did not seat any potential juror who heard the term "career criminal" or who heard the word "criminal" and understood that it had been used to refer to Weatherspoon. Weatherspoon does not show by clear and convincing evidence that the appellate court erred in making this finding of fact. As there was no improper outside influence on the jury, there was no need to hold a *Remmer* hearing, and Weatherspoon's contention that he was denied an impartial jury is without merit. Likewise, because Weatherspoon does not show that there is any reason to doubt the jury's impartiality, he fails to demonstrate that he was denied a fair trial. Finally, even if the court assumes that the state appellate court erred and that the jury was exposed to the improper remark, Weatherspoon has done nothing to demonstrate that the unauthorized contact with the jury created actual juror bias or that he was prejudiced in any way by the alleged trial error.[2] For these reasons the magistrate judge recommends that the court overrule Weatherspoon's second ground for relief.

---

[2] The fact that the jury was hung on count 1 suggests that petitioner was not prejudiced.

IV

For the reasons given above the magistrate judge recommends that the court deny Weatherspoon's petition for a writ of habeas corpus.

Date: December 13, 2007        /s/Patricia A. Hemann
Patricia A. Hemann
United States Magistrate Judge

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. See United States v. Walters, 638 F.2d 947 (6th Cir. 1981). See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)